Day, J.
A reversal of the judgment is sought on two grounds:
1. That Grand river is not a navigable stream at the point in controversy.
2. That, if it-can be so regarded, under the circumstances of the case, an injunction is not the proper remedy.
The first question, then, to be considered is, whether Grand river is a public highway. We are not aware that it has been so declared by any legislative act, other than by what is found in the “ articles of compact,” contained in the ordinance of 1787, declaring the “navigable waters” leading into the Mississippi and St. Lawrence to be “ common highways.” But it may be regarded as settled in this state that all navigable rivers are public highways. Whether this is based on the ordinance of 1787, or on the principles of the common law applicable to our condition, it is not now necessary to inquire. The doctrine finds support upon, both grounds.
Having no tidal waters in the state, the word “ navigable,” as applied to our rivers, is not used in the technical sense of the common law; but is applied, as in the popular sense, to all rivers that are navigable in fact.
A river is regarded as navigable which is capable of floating to market the products of the country through which it passes, or upon which commerce may be conducted; and, from the fact of its being so navigable, it becomes in law a public river or highway. The character of a river, as such highway, is not so much determined by the frequency or its use for that purpose as it is by its capacity of being used by the public for purposes of transportation and commerce.
Without recapitulating the facts found upon the evidence by the court belorv, it is .only necessary to say we are of *528 opinion that they are sufficient in law to establish the navigability of Grand river. Upon it the products of the’ country may be transported ; and, by means thereof, in connection with the lake into which it flows, commerce may be carried on with other states, and with foreign countries, It is, therefore, a highway of the state, and falls also within the description of waters which are now held to be navigable waters of the United States.
It also appears that the navigable capacity of the river extends above the point where it was proposed to erect the-bridge in controversy, and through the land of the plaintiff' below.
It is equally clear, that the b'ridge would effectually interrupt all navigation at that point, and practically destroy the navigability of the river above the bridge. Such a destruction of the navigable capacity of the river, where it is used by the public, could not be regarded otherwise than-as a public nuisance, for it would be an obstruction of a public highway, which, though it may be used by but few,, all have the right to use.
The obstruction of the navigation of the river at the point contemplated would work a special damage to the-plaintiff below. For it appears that he is the owner of lands on the navigable part of the river above the proposed bridge, and that there were upon his premises a landing and warehouse, which were more or less profitably used in connection with the navigation of the river when it was not-obstructed. This was a use of the river at that place, to-which he was entitled above that enjoyed by the public for the public right was that of an easement merely in the waters of the river for the purposes of navigation.
The value of this private use of the river, in connection with the landing and warehouse at the point in question, as well as that of the landing and warehouse themselves, depends upon the extent of commerce that may be carried onto and from that point, and it may vary with the changing' circumstances of the country; nevertheless, whatever suck value may be, the right remains as the private property of *529 the owner of the land, and the destruction of navigation to-that point would render this right valueless, and, therefore,, would be to his damage of a special and substantial character..
But it is claimed, in behalf of the defendants below, that,, as commissioners of Lake county, they might build the-bridge in question, by virtue of the authority vested in them as the successors of the plank-road company. The-company has, pursuant to the statute authorizing the proceeding, surrendered its road to the public, whereby it comes under the control of the commissioners. But, if it be conceded that they might exercise the powers granted to the plank-road company,‘it remains to be considered whether the company had the power to build a bridge at the place,, and like the one in controversy.
The plank-road company was incorporated in 1849, by a. special act of the legislature. The act conferred upon the company the power to construct a plank-road, by the most eligible route, from the mouth of Grand river, in Lake-county, to such point on the Pennsylvania and Ohio canal, in Trumbull county, as the company might select; and,, for that purpose, was authorized “ to enter upon and take possession of any lands, roads, streets, alleys, stone,, timber, and earth,” necessary for its construction, with all its “necessary appurtenances and appendages, doing no-unnecessary damage.” This is all the authority conferred by the act, which relates to the question under consideration, except that contained in the following section :
“ If said company shall construct said road from Pair-port across Grand river to the northerly line of the corporate town of Painesville, and shall erect a good and substantial bridge, suitable for said purpose, across said river, where; said road passes over the same, said company shall be entitled to charge as tolls thereon, any amount that by this act they are entitled to charge in the aggregate, not exceeding that which they are allowed to charge for five miles, on said road.”
*530 That the act conferred power to build a bridge across' Grand river is not disputed. Though not given in express terms, it is necessarily implied in the grant of power to construct a road from one point to another, between which points the river must be crossed.
But does it confer power to build a bridge of a character and at a place that will obstruct the navigation of the river ? Such a power is not expressly given; on the contrary, the act evinces a purpose that no “ unnecessary damage ” should be done in the construction of the road, or its “ appurtenances.” Moreover, it appears that, when the act was passed, the bridge then across Grand river, on the road from Fairport to Painesville, was above the one in controversy, and above the navigable part of the river. So it is not at all improbable that the bridge across the river, to be built, as expressed in the act, “ where said road passes over the same,” was, in the contemplation of the act, to be -constructed near the one then in existence, where it would do no “ unnecessary damage ” to the navigation of the river. Without this construction that clause has no significance in the act.
But however that may be, there is no apparent necessity for building the bridge' at a place, or in a manner, that will obstruct the navigation of the river. On the contrary, it is quite apparent that it might be constructed where it would not have that effect; or that it might at least be constructed with a draw, in such a manner as to be consistent with the use of the river for purposes of navigation.
Since, then, the act confers no express power to obstruct •the navigation of the river, and it was not necessary for the accomplishment of the purpose contemplated by the general power granted, the obstruction of the river finds no warrant in the act. Nor can it be claimed under the general powers conferred by law upon the commissioners.
Powers in derogation of the rights of individuals, or of the public, conferred in general terms upon corporations or public officers, must be construed with some degree of *531 strictness. Where the legislature has power to require one public easement to yield to another more important, the intention to grant such power must appear by express words, or by necessary implication. Such implication can arise only when requisite to the exercise of the power expressly granted, and it can be extended no further'than the necessity of the case requires. Springfield v. Railroad, 4 Cush. 63; Fall River, etc. v. Railroad, 5 Allen, 221.
The obstruction of the river can not be justified on the ground of prescriptive right. If such right to obstruct a public highway could be acquired, sufficient time had not elapsed. Neither had the plaintiff below, nor those under whom he claims, waived any of their rights. Though the bridge was originally built without objection, no affirmative consent was given. Objections to repairing it were not wanting as soon as it was impaired by floods; and since it has been swept away, and the navigation of the river left again unobstructed, it is insisted that it shall so remain. Nor, indeed, is it claimed that a right to reconstruct the bridge so as to obstruct the navigation of the river has been acquired, either by reason of the length of time since one was so constructed, nor by the acquiescence in such obstruction by the plaintiff below. But it is insisted that these facts, in connection with the insignificance of the navigation of the river, are of decisive weight in determining, both the question relative to the navigable character of the river and that of the complainant’s right to an injunction. Undeniably there is much force in these considerations: still, the importance of this as well as other inlets of the lake to the commerce of the state, and the growing necessity of their preservation for that purpose, admonish us that they should not have an undue weight, for the purpose of upholding claims in derogation of the rights of the public and of individuals.
Since, then, the commissioners had no lawful authority to obstruct the navigation of the river, and the obstruction they proposed to erect would occasion a public nuisance that would work a private damage to the plaintiff' below, we *532 are not prepared to say, that the court below errred inf holding that an injunction was a proper remedy to be en forced in the case. It would seem that no other remedy was adequate to the peculiar relief sought. The right to build abridge was not denied, but the contest related to the kind of bridge that might lawfully be constructed. An injunction was sought only against the building of a bridge without a draw, and thereby to necessitate the construction of a draw-bridge, so that both the easement of the road and that of the river might be enjoyed by the public, and that' the private right of the plaintiff below might he preserved from substantial and unnecessary damage. The proceeding in equity was, moreover, an especially appropriate mode-of defining the powers of the public officers who were the-defendants in the action, and of preventing a multiplicity of suits.
On the whole, we are constrained to say, we are not satisfied that the court below were wrong in the result at which they arrived. It follows that the judgment must be affirmed.